## Kappel, Appellant, v. Meth.

Argued October 21, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

444

*Earle Hepburn,* for appellant.

*Albert G. Newton,* with him *Herman P. Abramson,* for appellee.

OPINION BY CUNNINGHAM, J., January 29, 1937:

On June 14, 1934, a jury in the Municipal Court of the County of Philadelphia rendered a verdict in favor of the plaintiff for $716.40, in a suit for wages. Motions for judgment n. o. v., or a new trial, were filed, but on July 20th the defendant paid $243 on account of the verdict and agreed to pay the remainder at the rate of $50 per month, beginning September 1st. On September 17th the instalment due September 1st not having been paid, the motions were dismissed for want of prosecution and judgment was entered on the verdict. No appeal was taken from the judgment. When original and alias executions were issued the personal property levied upon was claimed by the defendant's wife and rules for sheriff's interpleader proceedings were made absolute and are still pending. On December 17th defendant obtained a rule from the trial judge to open the judgment and reinstate his motion; it was discharged on December 31st, and no appeal was taken.

On March 12, 1935, more than five months after the term at which the judgment had been adversely obtained, another judge of the court below entertained a second, and substantially duplicate, petition to open the judgment and granted a rule to show cause why it should not be opened and the motions reinstated. Eight months later—November 8, 1935,—the rule was made absolute and the defendant's motion for judgment, notwithstanding the verdict, granted, nunc pro tunc; the rule for a new trial was discharged. From the judgment thus entered plaintiff has taken this appeal.

A brief review of the pleadings is essential to an understanding of the grounds upon which the court below entered judgment in favor of the defendant. The material averments of the statement of claim were: That Kappel, the appellant, had been employed by the defendant as a baker in a machine bakery at varying rates of wages since 1927, and that his wages on August 15, 1933, were $40 per week. On that date the defendant executed an agreement with the President of the United States, entitled, "President's Re-employment Agreement," and stated to have been "authorized" by Section 4a of the "National Industrial Recovery Act," under the terms of which defendant agreed, inter alia, that after August 31, 1933, he would not work any employee "for more than forty hours in any one week," or if, under certain conditions therein prescribed, it became necessary to work an employee more than the specified number of hours the defendant would pay "at least time and one third ...... for hours worked in excess of the maximum." It was further averred that the limit of forty hours per week was subsequently extended to "44 hours per week relative to bakers." Appellant then set forth a statement purporting to show the actual number of hours he worked each week from the week ending September 2, 1933, to and through the week ending March 24, 1934, as well as the number

of hours he worked each of these weeks in excess of forty-four. According to appellant's statement, he worked 2,090 hours during the period, which was 771 hours in excess of a forty-four hour week. As his wages were ninety cents per hour, on the basis of a forty-four hour week, he brought suit for $925.20, i. e., for 771 hours overtime at the rate of "time and one-third"—$1.20 per hour.

In his affidavit of defense, the defendant admitted the execution of the agreement and that appellant's wages at the time it became effective were $40 per week. The defense interposed was twofold: (a) That appellant was employed in a "managerial" capacity—such employees being expressly excluded from the agreement; and (b) That the extension to forty-four hours per week applied only to machine bakeries and that the bakery in which appellant was employed was a hand bakery, in which classification the maximum was fifty-one hours per week.

The trial judge submitted two questions to the jury: (1) Whether appellant was employed in a managerial capacity, and (2) Whether defendant's bakery was a machine or a hand bakery. The jury was instructed that if appellant was employed in a managerial capacity the verdict should be for the defendant. The evidence is not printed, but we understand it showed that if the bakery was a hand bakery the excess time would be 551 hours. The verdict was in favor of the appellant for $716.40, indicating that the jury concluded he was not employed in a managerial capacity but that the bakery was a hand bakery. No question was raised in the affidavit of defense, or during the trial, with relation to the constitutionality of the National Industrial Recovery Act, or as to the character of defendant's business, i. e., whether interstate or purely intrastate.

As stated, after judgment had been entered on September 17, 1934, and during the pendency of proceed-

ings for the collection thereof, namely, on December 17th, defendant filed his first petition to open the judgment and for the reinstatement of his motions for judgment n. o. v., or a new trial; this rule was discharged on December 31st by the judge who presided at the trial of the case and no appeal was taken from his order. On March 12, 1935, another petition was presented by the defendant to open judgment and reinstate the motions upon the same grounds. One of the judges of the court below, other than the judge who had discharged the previous rule, granted a rule upon this second petition.

The main ground for opening set out in each petition was that neither the National Industrial Recovery Act, nor the President's Re-employment Agreement afforded any basis for the original action, and that "in so far as the statute attempted to regulate intrastate affairs it is unconstitutional," and the agreement authorized thereby consequently invalid. It was also averred that it was not shown at the trial that defendant was engaged in interstate commerce.

Appellant's answer to the second rule set up the discharge of the former rule, granted upon the same ground, the failure of defendant to appeal therefrom, the payment on account of the verdict, the expiration of the term at which the judgment was entered, and the failure of defendant to make the defense now sought to be interposed at the trial. Proof that defendant's business was solely intrastate was demanded, if that question be deemed material. The matter seems to have been put down for argument by the defendant upon rule and answer, without making any attempt to show the character of defendant's business.

On November 8, 1935, the judge who granted the second rule opened the judgment, reinstated the motions, denied the one for a new trial but granted the

motion for judgment n. o. v. and entered judgment for the defendant, nunc pro tunc.

In the meantime, May 27, 1935, the case of *Schechter Poultry Corp. v. United States*, 295 U. S. 495, holding the compulsory code provisions of the National Industrial Recovery Act unconstitutional, (because it contained an improper delegation of legislative authority, and undertook to regulate intrastate commerce) had been decided.

In his opinion, supporting the action now appealed from, the hearing judge relied upon that case and a prior decision written by him in a case relating to intrastate business.

After stating that "a jurisdictional question may be raised at any stage of litigation," he continued: "In the present case, there was no legal foundation for the verdict of the jury, there being no jurisdiction in the court to entertain the claim which was asserted."

Appellant argues that Judge GABLE, to whom the second petition to open judgment was presented on March 12, 1935, was without authority to entertain that petition because it contained the same, and only the same, matters which had become res judicata when Judge BONNIWELL, the trial judge, dismissed, on December 31, 1934, the defendant's prior petition to open and no appeal was taken from that order. We think there is merit in this contention. Granting the general proposition relied upon by Judge GABLE that the question of jurisdiction over the subject matter may be raised at any time during the course of the proceedings—but bearing in mind that there is no suggestion of fraud of any kind at any stage of this case—it seems to us that appellant is entitled, under the history of this case as above related, to invoke the doctrine of res judicata by asserting that the course of these proceedings terminated when the time limit for taking an appeal from Judge BONNIWELL'S order expired.

The judgment opened by Judge Gable was an adverse judgment entered upon a verdict. That the doctrine relied upon by appellant is applicable to petitions to open judgments is clear from the following authorities: *Armstrong County v. Plumcreek Township Overseers,* 158 Pa. 92, 27 A. 842; *Irwin's Appeal,* 9 Sadler 479; *Himes et al. v. Kiehl et al.,* 154 Pa. 190, 25 A. 632; *Mellerio v. Freeman,* 211 Pa. 202, 60 A. 735.

It is true there have been cases in which a second petition to open was entertained, as in *Holland Furnace Company v. Gabriel, et al.,* 102 Pa. Superior Ct. 578, 157 A. 373; *Silberman et al. v. Shuklansky et al.,* 172 Pa. 77, 33 A. 272; *Johnson v. Nippert,* 286 Pa. 175, 133 A. 150; but in each of them two distinguishing factors were present—the judgments had been entered by confession, and the later petitions were based upon new, or additional, grounds. See also *New Amsterdam B. & L. v. Moyerman,* 95 Pa. Superior Ct. 47.

The rule has also been applied in other jurisdictions: *Webster v. Board of Supervisors,* 47 Wis. 225, 2 N. W. 335; *Rogers v. Hoenig,* 46 Wis. 361, 1 N. W. 17; *Luke v. Coleman,* 38 Utah 383, 113 Pac. 1023; *Burnham et al. v. Spokane Mercantile Co. et al.,* 18 Wash. 207, 51 Pac. 363. The case last cited closely resembles the one with which we are now concerned. The first motion for a new trial was refused by the trial judge; a second motion, upon the same grounds, was allowed by another judge of the same court. It was held that neither the trial judge nor the other judge had power to entertain the second motion as the remedy, if error had been committed in the first instance, was to appeal from the denial of the first motion.

Another procedural error in this case is that Judge GABLE'S action in opening the judgment, reinstating the motions, and entering judgment n. o. v., was taken after the expiration of the term during which the original judgment in favor of appellant was entered.

The rule here applicable is that a judgment entered by confession or by default remains within the court's power without time limit, but an adverse judgment may not be opened after the expiration of the term at which it was entered unless fraud, or some other recognized equitable ground for relief, is shown: *Hill v. Egan,* 2 Pa. Superior Ct. 596; *Abeles v. Powell,* 6 Pa. Superior Ct. 123; *O'Donnell v. Flanigan,* 9 Pa. Superior Ct. 136, *Kauffman v. Reese,* 77 Pa. Superior Ct. 601; *Betts v. Y. M. C. A.,* 88 Pa. Superior Ct. 568. Some of the cases which have made exceptions to the rule, on the ground of strong equitable appeal, are: *New Prague Flouring Mill Co. v. Kirschner,* 70 Pa. Superior Ct. 74, (leave to file supplemental affidavit of defense having been granted during the term, the court opened the judgment after term to permit its consideration); *Brader v. Alinikoff,* 85 Pa. Superior Ct. 285, (judgment opened after term to ascertain amount due under it); *Salus et al. v. Fogel,* 302 Pa. 268, 153 A. 547, where a judgment entered upon the last day of the term, after a trial at which neither the defendant nor his attorney was present, was opened. Also, a judgment irregularly entered may be opened after the term: *Trestrail v. Johnson,* 297 Pa. 49, 146 A. 150; *Haverford Township School District v. Herzog et al.,* 314 Pa. 161, 171 A. 455. The doctrines we have been considering have a very definite purpose; there must be a point at which litigation, such as is here involved, is deemed to be terminated.

The judgment appealed from might well be reversed for the reasons thus far stated, but it may also be doubted whether the court was right in holding that "there was no legal foundation for the verdict of the jury," because the action was commenced and the verdict recovered under a statute subsequently declared unconstitutional. The question of the constitutionality of the National Industrial Recovery Act was not raised at the trial of this case. Moreover, it is not accurate

to say this action was based upon that statute; it was based upon a contract which might well have been made between the President and the employers who saw fit to become parties thereto without the existence of any statute. The consideration for the contract was the agreement of other employers to enter into the same obligations as those assumed by the defendant in this case. Their employees were the beneficiaries of such contracts and there is nothing in this record to indicate that the contract sued upon was entered into under any legal compulsion.

It seems to us the decision in the Schechter case had little, if any, bearing upon the liability of the defendant under the contract. These contracts, as well as the jurisdiction of state courts to entertain suits thereunder, have been recognized in a number of cases, among which are: *James v. Sartin Dry Cleaning Co.*, 208 N. C. 412, 181 S. E. 341, (1935); *Fryns et al. v. Fair Lawn Fur Dressing Co.*, 114 N. J. Eq. 462, 168 A. 862; *Mesloh v. Schulte*, 151 N. Y. Misc. 750, 273 N. Y. Supp. 699, (1934).

Again, it must be remembered that the decision in the Schechter case dealt with the *code provisions* of the statute and held they were invalid because they amounted to a delegation of legislative authority to the President and invaded the prerogatives of the several states by attempting to include thereunder intrastate commerce. These code provisions were compulsory but the President's Re-employment Agreements were voluntary. The opinion in the Schechter case made no reference of any kind to them. Our conclusion is that the assignment of error to the action of the court below should be sustained.

The judgment in favor of the defendant is reversed; the judgment upon the verdict is reinstated and the record is remitted with instructions to discharge the rule granted March 12, 1935, to show cause why the judgment on the verdict should not be opened.